



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Norman Griffin, | ) | Docket No. 2018-06-0301 |
| Employee, | ) | |
| v. | ) | |
| Coca-Cola Bottling Company, | ) | State File No. 97328-2016 |
| Employer, | ) | |
| And | ) | |
| Agri General Insurance Company, | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

---

## COMPENSATION HEARING ORDER

---

The Court held a compensation hearing on November 19, 2019. The issues are Mr. Griffin's entitlement to additional permanent partial disability benefits and in particular whether he made a meaningful return to work at Coca-Cola. Because Coca-Cola failed to accommodate Mr. Griffin's work restrictions, the Court holds his later resignation after a meaningful return to work was reasonable and that he is entitled to an original award of permanent partial disability benefits, a resulting award and increased benefits.

### History of Claim

Mr. Griffin, age fifty-two, worked as a merchandiser for Coca-Cola, transporting its product to retail stores and pulling pallets of merchandise into the stores to stock shelves and build displays. These tasks required pushing heavy pallets on wheels around the stores. The heaviest items he lifted were 24-packs of soda, which he said weighed "almost fifty pounds," and some shelves were six feet off the ground or higher, requiring him to lift overhead.

Mr. Griffin injured his neck on December 15, 2016, and Coca-Cola accepted the claim.

Mr. Griffin received authorized treatment from Dr. James Fish until August 7,

1

2017, when Dr. Fish placed him at maximum medical improvement and released him to work with restrictions. Specifically, Dr. Fish restricted Mr. Griffin from lifting more than twenty pounds overhead or fifty pounds wrist to floor or floor to waist. He also set a maximum carrying limit of no more than fifty pounds. Under "patient instructions," Dr. Fish added "no extreme neck or trunk range of motion, no lifting more than 25 pounds overhead, no continuous work above the shoulder level for more than 1 hour at a time.[1]" The notes further state that Mr. Griffin did not want to undergo surgery at that time. Dr. Fish testified:

> He was pretty adamant early on about not having surgery, and we discussed it in 2017 during treatment, but he was kind of improving with conservative measures, and he just decided, or we decided together, in late 2017, to just go the conservative route and see how he would do.

After his release, Mr. Griffin contacted Coca-Cola about returning to work. He testified that he discussed his restrictions with a supervisor named John Messer and a human resources representative named "Hope." According to Mr. Griffin, Mr. Messer said they would help him, but Hope insisted he could only return if at full duty. Mr. Griffin asked if he could work a different position, but the response was no.

Based on Mr. Messer's assurances that he would get assistance, Mr. Griffin returned to work at Coca-Cola. He said coworkers helped him for "the first couple of days," but afterward he was on his own. He later started to feel tingling and numbness in his neck and back. About a week and a half later, Mr. Griffin told his direct supervisor about his returning symptoms and that he could not continue to work. The supervisor said he understood and accepted Mr. Griffin's resignation. At that time, Mr. Griffin earned $26.62 per hour.

After his resignation, Mr. Griffin worked at a gas station for a few months earning $10 per hour. He then returned to Dr. Fish seven or eight months later seeking the surgery that the doctor earlier recommended. He said, "I could tell it wasn't going to get better." He acknowledged on cross-examination that Dr. Fish recommended surgery at least a year earlier, but he did not want to undergo it at that time. He testified that, after Dr. Fish explained the risks of surgery, he was scared and did not want to take chances at that point.

In October 2018, Mr. Griffin underwent a two-level cervical fusion. On February 25, 2019, Dr. Fish assigned a five-percent impairment and a permanent restriction of no lifting more than fifty pounds overhead. At his deposition, Dr. Fish reviewed Mr. Griffin's testimony regarding his job requirements at Coca-Cola and stated that, as of his second release of Mr. Griffin, "it would be a bad idea for him to be doing that job," and

---

[1] The medical records conflict in the limits on overhead lifting.

"with his current restrictions as they are, he shouldn't be doing that."

Mr. Griffin started working for Frito Lay after the surgery. He testified that his job duties are similar to those at Coca-Cola, but the items are "a lot lighter," and he never lifts anything above his chest. Mr. Griffin testified that he earns $16.50 per hour and has received no raises since starting the job.

The parties agreed that Mr. Griffin's original award is $17,151.98. This is based on an average weekly wage of $1,143.46 and a compensation rate of $762.31. His initial compensation period expired on August 8, 2019.

Mr. Griffin argued that Coca Cola did not accommodate his restrictions when he was first released, so he was forced to quit and work with other employers for lower pay. Coca-Cola argued that, had Mr. Griffin agreed to the surgery when Dr. Fish first proposed it, his restrictions would have been less severe and it could have accommodated him. In the alternative, Coca Cola argued that Mr. Griffin offered no evidence except his own testimony regarding his earnings at the time of the expiration of the initial compensation period, August 8, 2019.

*Evidentiary Ruling*

Coca-Cola filed a motion to compel discovery on October 31 seeking written discovery responses and sanctions against Mr. Griffin. Specifically, it requested a ruling that Mr. Griffin be precluded from introducing evidence sought in the written discovery as well as attorney's fees. The Court deferred ruling on the motion at the pretrial conference because Mr. Griffin had not responded to the motion and was within his five-day deadline to do so. He filed a response later that day.

The Court holds that the written discovery sought substantially the same information that Coca-Cola obtained at Mr. Griffin's deposition on August 12. Mr. Griffin's untimely response did not prejudice Coca-Cola's ability to participate in mediation, as shown by the fact that it did not file its motion until afterward, nor did it hamper Coca-Cola's ability to prepare for or defend the case at the compensation hearing. Therefore, the Court declines to sanction Mr. Griffin by excluding his evidence. However, the Court finds it troubling that, despite reminders at court appearances, Mr. Griffin's attorney failed to respond to the written discovery until approximately four months after it was due. Therefore, the Court agrees with Coca-Cola that an award of attorney's fees for the preparation and filing of the motion is appropriate.

**Findings of Fact and Conclusions of Law**

At a compensation hearing, Mr. Griffin must establish by a preponderance of the evidence that he is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk.

3

Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2019).

Mr. Griffin seeks a resulting award and increased benefit under Tennessee Code Annotated section 50-6-207(3)(B). This provision states that if, at the end of the initial period of compensation, the employee has not returned to work for any employer at an equal or greater rate of pay as before the injury, then the employee qualifies for a resulting award equal to 1.35 times the original award. A trial court can further increase the resulting award if, among other considerations, the employee is over the age of forty when the initial period of compensation ended. However, the statute also states that "under no circumstances shall an employee be entitled to additional benefits" when the "loss of employment is due to the employee's voluntary resignation" provided that the resignation "does not result from the work-related disability." Tenn. Code Ann. § 50-6-207(3)(D)(i).

In examining the circumstances of a resignation, Tennessee case law looks to whether an employee has made a "meaningful return to work." As the Appeals Board explained:

> There will be a variety of factual situations wherein the courts will be required to construe the meaning of the words [meaningful return to work]. The ultimate resolution of their meaning will be leavened by an assessment of the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work.

*Dennis v. Polymer Components,* 2016 TN Wrk. Comp. App. Bd. LEXIS 47, at *11 (Sept. 27, 2016), citing *Newton v. Scott Health Care Ctr.,* 914 S.W.2d 884, 886 (Tenn. Workers' Comp. Panel 1995). In addition, if an injured worker is unable to continue working because of the injury, there generally will not have been a meaningful return to work. However, if the employee returns to work and sometime afterward stops working due to personal reasons or other reasons not related to the work injury, these circumstances are considered as making a meaningful return to work. *Dennis,* at *11-12. If the offer from the employer is not reasonable in light of the circumstances of the employee's physical ability to perform the offered employment, then the offer of employment is not meaningful. *Newton,* at *5-6.

Here, Mr. Griffin credibly testified that he received assistance for two days upon his return to work, but Coca-Cola offered no further accommodations, either by help from coworkers or changing his job duties. He explicitly stated, without objection, that Hope insisted he return *only* if he could work full-duty. Mr. Griffin further testified that, once he was on his own, he attempted to perform his job duties but felt tingling and numbness while doing so. Coca-Cola offered no countervailing testimony or documentary evidence to show it attempted to accommodate Mr. Griffin's restrictions.

Thus, the Court finds Mr. Griffin's decision to resign reasonable under these circumstances and that Coca-Cola's employment offer was not meaningful.

As to Coca-Cola's argument that it would have accommodated the restrictions if Mr. Griffin had undergone surgery earlier, the Court finds it wholly speculative. Dr. Fish testified that he was essentially in agreement to delay the surgery when he stated, "[H]he just decided, or *we decided together,* in late 2017, to just go the conservative route and see how he would do." (Emphasis added.) Moreover, and importantly, Dr. Fish testified that Mr. Griffin could not perform the job duties at Coca-Cola after reaching maximum medical improvement in February 2019.

The Court further disagrees with Coca-Cola's assertion that Mr. Griffin's testimony alone regarding his wages is insufficient and that he must provide proof of his earnings on the date the initial compensation period expired. First, Coca-Cola neither offered a reason why Mr. Griffin's testimony alone is unreliable, nor did it offer any contrary proof. Second, as to its argument regarding inadequate proof of his wages on the date the initial compensation period expired, Mr. Griffin credibly testified that he earned $16.50 per hour at Frito Lay and that he earned no pay raises since. The Court makes the reasonable inference that on August 8, 2019, Mr. Griffin earned $16.50 per hour, so further proof on that specific point is unnecessary. Thus, the Court finds Mr. Griffin has returned to work at a wage less than one hundred percent of the wages he received from Coca-Cola on the date of his injury.

In conclusion, Mr. Griffin has shown by a preponderance of the evidence that he is entitled to a resulting award and increased benefits under Tennessee Code Annotated Section 50-6-207(3)(B). His original permanent partial disability award of $17,151.98 is increased by multiplying the original award by factors of 1.35 for not returning to work and 1.2 for his age.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Griffin is entitled to permanent partial disability benefits totaling $27,786.21.

2. Mr. Griffin shall receive future medical benefits with Dr. Fish under Tennessee Code Annotated section 50-6-204(a)(1)(A).

3. Mr. Griffin's attorney is awarded a twenty-percent fee to be paid from the total award.

4. Mr. Griffin's attorney shall pay counsel for Coca-Cola $250.00 as a reasonable attorney's fee for time spent drafting the motion to compel discovery.

5. Costs of $150.00 are taxed to Coca-Cola under Tennessee Compilation Rules and

Regulations 0800-02-21-.06, to be paid to the Court Clerk within five days of this order becoming final.

6. Coca-Cola shall file a statistical data form (SD-2) with the Clerk within ten days of the date of this order under Tennessee Code Annotated section 50-6-244.

7. Unless this order is appealed, it shall become final thirty days after issuance.

**ENTERED November 20, 2019.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

6

# APPENDIX

Exhibits:
1. Dr. Fish's deposition transcript and exhibits

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Scheduling Hearing Order
5. Order Setting Compensation Hearing
6. Motion to Compel and Exclude
7. Dispute Certification Notice
8. Employer's Pre-Compensation Hearing Statement and Brief
9. Employer's Exhibit List
10. Employee's Compensation Hearing Exhibit List
11. Response to Employer's Motion to Compel and Exclude
12. Employee's Pre-Compensation Hearing Statement and Brief
13. Pretrial Order

## CERTIFICATE OF SERVICE

I certify that a copy of the Compensation Hearing Order was sent as indicated on November 20, 2019.

| Name | Certified Mail | Regular Mail | Email | Sent to: |
|------|----------------|--------------|-------|----------|
| David Goodman, Employee's Attorney | | | X | dgoodman@forthepeople.com treiley@forthepeople.com |
| Alex Morrison, Ryan Edens. Employer's attorneys | | | X | amorrison@mijs.com rcedens@mijs.com gpfranklyn@mijs.com jdhaynes@mijs.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

7



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# COMPENSATION HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):**_____At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone: _____Email:_____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*Attach an additional sheet for each additional Appellee *

## CERTIFICATE OF SERVICE

I,_____ , certify that I have forwarded a true and exact copy of this
Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all
parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee
Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___.


[Signature of appellant or attorney for appellant]       _____


Attention:  This form should only be used when filing an appeal to the Workers' Compensation Appeals
Board.  If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by
the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental  $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |

Groceries     $ _____ per month     Telephone     $ _____ per month

Electricity     $ _____ per month     School Supplies $ _____ per month

Water     $ _____ per month     Clothing     $ _____ per month

Gas     $ _____ per month     Child Care     $ _____ per month

Transportation  $ _____ per month     Child Support  $ _____ per month

Car     $_____ per month

Other     $ _____ per month (describe: _____ )

10. Assets:

Automobile     $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House     $ _____     (FMV) _____

Other     $ _____     Describe:_____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____